UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Wiley Y. Daniel**

Civil Action No. 04-cv-02154-WYD-PAC

BERNICE C. VIGIL,

     Plaintiff,

v.

JO ANNE B. BARNHART, Commissioner of Social Security,

     Defendant.

_____

**ORDER**
_____

I.    <u>INTRODUCTION</u>

     THIS MATTER is before the Court on a review of the Commissioner's decision that denied Plaintiff's applications for Supplemental Security Income under Title XVI of the Social Security Act ["the Act"].  Plaintiff's application filed in March 2002 (Transcript ["Tr."] at 51-54) was denied on initial determination (*id.* at 39-44).  Plaintiff then requested a hearing.  After a hearing on February 25, 2004 (*id.* at 224-246), Administrative Law Judge ["ALJ"] William J. Musseman issued an unfavorable decision on May 10, 2004, finding that Plaintiff was not disabled within the meaning of the Act. *Id.* at 14-27.

     In the decision, the ALJ found at step two of the five-step sequential analysis required by law that Plaintiff has severe impairments that do not meet or equal the Listings; namely, "fibromyalgia [and] history of left hip pinning."  Tr. at 18, 26.  He also

-1-

found that Plaintiff had a history of healed left leg fracture and an affective disorder that were not severe within the meaning of the regulations, and post-partum depression which did not meet the 12-month durational requirement of the Act.  *Id.*[1]  The ALJ noted that Plaintiff's "complaints of depression symptoms, headaches, back, neck and shoulder pain and spasms "are part of her fibromyalgia and are not separate diagnoses."  *Id.* at 18.

At step three, the ALJ found that Plaintiff's impairments, while severe, did not meet or equal any Listing.  *Id.* at 19, 26.  As to Plaintiff's physical impairments, the ALJ found that "[w]hile her physical condition causes some pain or discomfort, she has intact motor function, intact sensation and reflexes, no bony or joint abnormalities, and good range of motion."  *Id.*  As to mental impairments, the ALJ found that Plaintiff "lacks at least two marked functional limitations which would satisfy the requirements of any listing in section 12.00 which deals with mental disorders."  *Id.*  He also found that Plaintiff's activities show that she functions better than contemplated by the Listings and that the medical sources "mentioned no findings that would be medically equivalent to criteria contained in the Listing of Impairments."  *Id.*  The ALJ found as to the Part B criteria that Plaintiff "has mild restriction of activities of daily living, mild difficulties in maintaining social functioning, moderate difficulties in maintaining concentration, persistence, or pace, and no episodes of decompensation."  *Id.*  Finally, the ALJ found that "[t]he evidence does not establish the presence of the 'C' criteria."  *Id.*

---

[1]  Her left leg fracture was also found to not meet the 12-month durational requirement.  *Id.* at 18.

The ALJ then proceeded to evaluate Plaintiff's residual functional capacity ["RFC"].  Tr. at 19-24.  He found, after a review of the evidence, that Plaintiff "has the residual functional capacity to perform the full range of light work exertionally."  *Id.* at 24.  In so finding, he rejected the opinions of Plaintiff's treating medical sources (*id.* at 20-23) and gave "some weight" to the reports of the state agency reviewing medical sources at Exhibit 5F. . . ."  *Id.* at 24.  He also found that Plaintiff has nonexertional limitations of "no foot or leg controls, no over chest-level work, only occasional dealing with the public, and no complex tasks defined as a SVP of 2 or less."  *Id.* at 24.  He stated that "[t]his assessment includes consideration of all the claimant's impairments, both severe and nonsevere, and gives some benefit of the doubt to the claimant in imposing these work-related limitations."  *Id.*

In making the RFC assessment, the ALJ stated that Plaintiff's "subjective complaints of pain and limitations are not credible to the extent alleged."  Tr. at 23.  He found in that regard that the medical and other evidence did not corroborate Plaintiff's allegations of physical or mental disability.  *Id.* at 19, *see also* 23 ("the claimant's subjective complaints suggest a greater degree of impairment than can be shown by the objective medical evidence alone").  He also found that Plaintiff's allegation of disabling pain is inconsistent with her treatment.  *Id.* at 24.  Finally, the ALJ noted that "[a] significant factor that undermined her credibility was her good range of activities of daily living which are inconsistent with an individual who has a great deal of pain or depression."  *Id.* at 23.

At step four, the ALJ found that Plaintiff could not perform her past relevant work as a kitchen helper.  The basis of that finding was that the past relevant work is an unskilled medium occupation, and Plaintiff is limited to light work.  Tr. at 25, 26.

The ALJ then proceeded to step five.  He considered Plaintiff's age (38 years old at the time of the decision, constituting a younger individual within the meaning of the regulations), education (high school), vocational profile (unskilled), RFC, and the testimony of a vocational expert ["VE"].  Tr. at 25.  The VE testified that a hypothetical person with a RFC and vocational profile identical to that of Plaintiff was capable of working as a small parts assembler with 498,000 jobs nationally and 6,215 in Colorado, cafeteria attendant with 106,000 jobs nationally and 2,350 in Colorado, and a call out operator with 480,000 jobs nationally and 980 in Colorado.  These were "examples only", and according to the ALJ "are at a SVP of 2 or less."  *Id.*

The AlJ found that the VE's testimony was credible and consistent with the evidence.  Tr. at 25.  He further noted the VE's statement that there was no conflict with the occupational evidence he provided and information found in the Dictionary of Occupational Titles.  *Id.*  Accordingly, the ALJ found that the jobs listed by the VE were "representative of a significant number of jobs available in the national economy" and that Plaintiff "can make a vocational adjustment to other unskilled work found in significant numbers in the national economy and she is not disabled."  *Id.*  In so finding, the ALJ recognized that the VE also testified that if Plaintiff's treating physician Dr. Jackson's assessment at 7F in the Transcript was credited (Tr. at 153-66), there would be no occupations the Plaintiff could perform.  *Id.* at 25; *see also* 26-27.

-4-

The Appeals Council denied review of the ALJ's decision (Tr. at 4-7).  This Court

has jurisdiction to review the decision pursuant to 42 U.S.C. § 405(g).

II.   ANALYSIS

A.   Standard of Review

A Court's review of a finding that Plaintiff is not disabled is limited to determining

whether the Commissioner applied the correct legal standard and whether the decision

is supported by substantial evidence.  *Hamilton v. Sec. of Health and Human Servs.*,

961 F.2d 1495, 1497-98 (10th Cir. 1992).  Substantial evidence is evidence a

reasonable mind would accept as adequate to support a conclusion.  *Brown v. Sullivan*,

912 F.2d 1194, 1196 (10th Cir. 1990).  It requires more than a scintilla of evidence but

less than a preponderance of the evidence.  *Gossett v. Bowen*, 862 F.2d 802, 804

(10th Cir. 1988).  "Evidence is not substantial if it is overwhelmed by other evidence in

the record or constitutes mere conclusion."  *Musgrave v. Sullivan*, 966 F.2d 1371, 1374

(10th Cir. 1992).  Further, "if the ALJ failed to apply the correct legal test, there is a

ground for reversal apart from substantial evidence."  *Thompson v. Sullivan*, 987 F.2d

1482, 1487 (10th Cir. 1993).  Although the court should carefully examine the record, it

may not weigh the evidence or substitute its discretion for that of the Commissioner.  *Id.*

B.   Analysis of Plaintiff's Arguments

1.   Whether the ALJ Erred in Weighing the Reports of the Treating
     Physicians and other Medical Sources

Plaintiff argues that the ALJ erred in rejecting the RFC report of Plaintiff's

treating physician, Dr. Jackson (Tr. at 154-59) and his other findings regarding

Plaintiff's impairments found in the record.  *See* Tr. at 153, 160-62, 164-66, 181-189.

Plaintiff also argues that the ALJ erred in rejecting the reports of her treating

psychiatrist Dr. Caesar, as substantiated by the consultative examiner Dr. Wesley.  *See*

*id.* at 168-169, 133.  Plaintiff asserts that Dr. Caesar's records support a finding that her

mental impairments meet or exceed Listing § 12.04 as to Affective Disorders.  Plaintiff

concludes that the justifications proffered by the ALJ for rejecting the opinions and

findings of her treating physicians and Dr. Wesley are not legitimate in light of the

evidence in the record that confirms those opinions.

Turning to my analysis, an ALJ is "required to give controlling weight to a

treating physician's opinion about the nature and severity of a claimant's impairments,

including symptoms, diagnosis and prognosis, and any physical or mental restrictions,

if 'it is well supported by clinical and laboratory diagnostic techniques and if it is not

inconsistent with other substantial evidence in the record.'"  *Bean v. Chater*, 77 F.3d

1210, 1214 (10th Cir. 1995) (quotation omitted); *see also* 20 C.F.R. § 404.1527(d)(2);

Soc. Sec. Ruling 96-2p.  However, a treating physician's report can be rejected "if it is

brief, conclusory and unsupported by medical evidence" or is "not supported by specific

findings."  *Bernal v. Bowen*, 851 F.2d 297, 301 (10th Cir. 1988).

"'When a treating [source's] opinion is inconsistent with other medical evidence,

the ALJ's task is to examine the other [sources'] reports "to see if they outweigh the

treating [source's] report, not the other way around."  *Valdez v. Barnhart*, 62 Fed. Appx.

838, 2003 WL 366751 at *2 (10th Cir. 2003) (quoting *Goatcher v. United States Dep't*

*of Health and Human Servs.*, 52 F.3d 288, 290 (10th Cir.1995)).  "The ALJ must give

specific, legitimate reasons for disregarding the treating physician's opinion that a

claimant is disabled." *Goatcher*, 52 F.3d at 290.

I find for the reasons stated below that the case must be remanded for further

factfinding on this issue.  The ALJ's reasons for rejecting the impairments noted by

Plaintiff's treating physicians are not based on substantial evidence and the ALJ did not

properly weigh the medical sources' findings.

As to the opinions of treating physician Dr. Jackson and physician assistant

Brian Jackson found in the record at 153-166 and 189, the ALJ stated that he "placed

no weight on the opinions."  Tr. at 20.  He found that the conclusions therein "are

contrary to the entire record, are based on combined physical and mental findings

which are not well supported by the medical evidence, and are offered by the physician

assistant."  *Id.* at 20-21.  The ALJ further found that opinions about whether or not an

individual is disabled or unable to work are reserved to the Social Security

Administration.  *Id.* at 20.

I first address Dr. Jackson's and the physician assistant's findings regarding

Plaintiff's physical impairments.  The ALJ's decision to reject these findings of Plaintiff's

treating sources appears to be based primarily on the fact that the findings are contrary

to the record and not supported by the medical evidence.  The ALJ asserts in that

regard that x-ray evidence did not reveal any significant abnormalities, and that Plaintiff

had good range of motion when she was examined in January 2002.  Tr. at 19.  The

ALJ further asserts that these findings "refute the claimant's allegation of disability due

to a broken left femur and fail to establish the existence of osteoporosis or even significant degenerative changes." *Id.* at 19-20.

The ALJ finds on the diagnosis of neuropathy that "objective medical findings were minimal and certainly showed no evidence of actual neuropathy." *Id.* at 20.  He further stated that Plaintiff "had good back range of motion and full range of motion of all extremities excepting her left hip" and "[t]here were some minimal objective findings consisting of some tenderness and occasional spasm on musculoskeletal examinations." *Id.*  The ALJ thus appeared to reject the diagnosis of neuropathy based on the fact that there was no objective medical evidence of neuropathy in Plaintiff's lower extremities.  *Id.*  He also rejected any disability based on Plaintiff's left hip condition finding that the opinions were not related to any specific findings and the medical notes reflect minimal objective medical findings and minimal x-ray findings.  *Id.*

I find that the ALJ's decision to reject the treating sources' findings on the above grounds are not supported by substantial evidence.  While there certainly was some lack of objective medical evidence as to Plaintiff's neuropathy and other physical impairments, there was not a complete lack of support for these diagnoses.[2]  The fact that these objective medical findings may not have been as extensive as the ALJ thought they should be does not give the ALJ grounds to simply reject them, particularly when there is no other medical evidence from any other physician that is contrary to

---

[2]  *See* Tr. at 161 ("[t]he patient does have some noted cervical as well as lumbar spasms" and "limitation in the range of motion in the back and lumbar spine"), 164 ("tenderness in the thoracic spine and the LS spine" and "full range of motion in all extremities *except for the left which is diminished*") (emphasis added), 165 ("[b]ack exam does show some thoracic myospasms noted on exam, tender to touch"), 181 ("tenderness of the lumbar spine specifically with muscle spasms present").

this evidence. *See Langley v. Barnhart*, 373 F.3d 1116, 1121 (10th Cir. 2004) ("'[i]n choosing to reject the treating physician's assessment, an ALJ may not make speculative inferences from medical reports and may reject a treating physician's opinion outright only on the basis of contradictory medical evidence and *not due to his or her own credibility judgments, speculation, or lay opinion.*'" (emphasis in original) (quotation omitted).

Further, the ALJ correctly recognized that Plaintiff was diagnosed with fibromyalgia, (tr. at 20), but failed to consider that objective findings are not required in connection with such a diagnosis. *See Glenn v. Apfel*, 102 F. Supp. 2d 1252, 1258 (D. Kan. 2000) (noting that courts have recognized that the pain suffered by those with fibromyalgia can be disabling, and that "[t]he symptoms of fibromyalgia are entirely subjective, and there are no clinical tests to identify its presence or severity") (quoting *Sarchet v. Chater*, 78 F.3d 305, 309 (7th Cir. 1996)). I also find that the ALJ erred in finding that Plaintiff's "complaints of depression symptoms . . . are part of her fibromyalgia and are not separate diagnoses." Tr. at 18. This again is another lay opinion of the ALJ that is not proper. Depression is certainly a distinct diagnosis and cannot be disregarded simply because a claimant also has fibromyalgia. I address the mental impairments more specifically below.

The ALJ also rejected the opinions of Dr. Jackson and physician assistant Brian Jackson because the reports contained "combined physical and mental findings." Tr. at 20. However, the fact that these practitioners commented on both Plaintiff's physical and mental impairments does not mean that the ALJ can reject legitimate findings as to

the physical impairments.[3]  The ALJ also rejected certain findings of these practitioners, including exhibits 7F and 10F, because they were made by the physician assistant.  I first note that many of these findings, including those in 7F and 10F, were signed by both the physician assistant and Dr.  Jackson.  Tr. at 153, 157, 189.  The ALJ thus should have treated those reports as coming from the treating physician.  *See McGoffin v. Barnhart*, 288 F.3d 1248, 1252 (10th Cir. 2002).  The ALJ was not entitled to reject them simply because the physician assistant's name was also on the reports, nor could he simply assume that Dr. Jackson had no input on these reports.  At the very least, if the ALJ had a legitimate concern about the extent of Dr. Jackson's input on these forms, he should have contacted Dr. Jackson on this issue.  *Id.*; *see also* 20 C.F.R. § 404.1512(e)(1).

To the extent the record contains medical evidence solely from physician assistant Brian Jackson, a treating source, the ALJ was also not entitled to simply disregard the evidence because Mr. Jackson is a physician assistant.  *See* 20 C.F.R. §§ 404.1513(d), 416.913(d)(1), 416.927(d).  As the Eighth Circuit noted, "an ALJ is not free to disregard the opinions of mental health providers simply because they are not medical doctors."  *Duncan v. Barnhart*, 368 F.3d 820, 823 (8th Cir. 2004).  "The amount of weight given to a medical opinion is to be governed by a number of factors including the examining relationship, the treatment relationship, consistency, specialization, and other factors."  *Id*.  "Generally, more weight is given to opinions of sources who have treated a claimant, and to those who are treating sources."  *Id*.

---

[3]  I address below the ALJ's decision to reject the mental findings.

The ALJ also rejected the RFC evaluation of Dr. Jackson and the physician assistant (Tr. at 153-159) on the basis that they "did not test the claimant's ability to lift, stand, or walk and merely recited [Plaintiff's] own subjective account of her discomfort and limitations." *Id.* at 21.  Further, he states that these findings are not supported since Plaintiff "has full range of motion of all extremities except her own hip."  I find that these conclusions of the ALJ are based on speculation and his own lay judgment, and are not proper.  There is nothing in the record to indicate that the findings in the RFC evaluation are based on Plaintiff's subjective account of her limitations.  These treating sources had an ongoing treatment relationship with Plaintiff and were familiar with her impairments based on their own medical testing and observation.  At the very least, if there was a legitimate concern about this issue the ALJ should have contacted Dr. Jackson.

Further, the finding that Plaintiff had "full range of motion of her extremities except her left hip" does not support the decision to reject the RFC evaluation.  First, as the ALJ noted, there was objective medical evidence indicating that Plaintiff was limited in her range of motion in her left hip, which could certainly explain the findings made in the evaluation.  Further, the ALJ was not entitled to ignore the other medical evidence and findings, including that of fibromyalgia, and render his own lay judgment that the restrictions noted in the evaluation were unsupported by the medical evidence.  Finally and importantly, there is nothing in the record that contradicts the findings in the RFC evaluation.  Without such evidence, the ALJ was not entitled to simply reject the impairments found to exist in the evaluation.

-11-

I now turn to the medical evidence regarding Plaintiff's mental impairments.  The ALJ rejected the findings made in connection with Plaintiff's mental health treatment at San Luis Valley Medical Center, including the Psychiatric Review Technique ["PRT"] evaluation signed by Plaintiff's treating psychiatrist Dr. Caesar (Exhibit 8F, Tr. at 167-69).  The ALJ also rejected certain findings of Dr. Wesley, the consultative psychological examiner (131-133).  *Id.* at 22-23.  The ALJ also rejected the findings regarding Plaintiff's mental impairments made by Dr. Jackson and Plaintiff's physician assistant.  In so doing, the ALJ found, among other things, that the treatment notes conflict with their opinion that Plaintiff is disabled and that it was "not within [Brian Jackson's] area of expertise as a physician assistant to evaluate the claimant's alleged psychiatric impairments and he did not account for all of the evidence."  *Id.*  The ALJ concluded that he gave "no weight . . . to the opinions offered by the physician assistant for Dr. Jackson since they are not based on supportive objective medical findings and are contrary to the entire file."  *Id.*

I first examine the  ["PRT"] evaluation of Plaintiff signed by Dr. Caesar, Plaintiff's treating psychiatrist.  Tr. at 167-69.  The evaluation concludes that Plaintiff meets the requirements of Listing 12.04.  The ALJ did consider the PRT evaluation in connection with assessing Plaintiff's RFC.  *Id.* at 20.  However, he accorded it "no weight when it was simply overrated by relying on the claimant's statements and was primarily completed by a social worker who is not an acceptable medical source although countersigned by a physician."  *Id.* at 23.

-12-

The ALJ also noted as other reasons for rejecting the PRT evaluation that while the evaluation found that the claimant has a loss of interest in activities, "the claimant is obviously engaging in ongoing child care activities" and other activities. *Id.* The ALJ rejected the finding that Plaintiff has marked difficulties in the area of concentration, persistence or pace, stating among other things that this is contradicted by the GAF score of 65, it was "inconsistent with memory testing where she could recall 5 out of 5 objects" and because Plaintiff "has adequate attention and concentration for her usual activities including child care and driving." *Id.*

I find that the ALJ did not give legitimate reasons for discounting the PRT evaluation. First, the report was signed by treating psychiatrist Dr. Caesar. The rejection of the report simply because it may have been filled out by a social worker is thus improper, particularly when the only signature that appears on the form is that of Dr. Caesar. *See McGoffin*, 288 F.3d at 1252.

Second, the conclusion that the report "simply overrated [the impairments] by relying on the claimant's statements" is not a legitimate basis to reject the report. Plaintiff was evaluated and tested by a mental health professional in connection with the preparation of this form. *See* Tr. at 176-77. This evaluation found that Plaintiff had certain mental impairments, including a GAF of 65. That evaluation provided some objective basis for the findings in the PRT form. *Thomas v. Barnhart*, 147 Fed. Appx. 755, 759, 2005 WL 2114163 (10th Cir. 2005) ("[a] psychological opinion . . . 'may rest either on observed signs or on psychological tests'") (quoting *Robinson v. Barnhart*, 366 F.3d 1078, 1083 (10th Cir. 2004). While the PRT form may also have been based

on Plaintiff's subjective statements, it was speculation for the ALJ to assume that the evaluation was based only on Plaintiff's statements.  Further, it is improper for an ALJ to reject a psychological opinion because it is based on a claimant's responses.  *Id*. at 760.  Indeed, as noted in *Thomas*, "[t]he practice of psychology is necessarily dependent, at least in part, on a patient's subjective statements."  *Id*. at 759.  "The ALJ cannot reject [a mental health practitioner's] opinion solely for the reason that it was based on [the claimant's]  responses because such rejection impermissibly substitutes [the ALJ's] judgment for that of [the practitioner]."  *Id*. at 760.

The ALJ also rejected the PRT evaluation based on other lay judgments which were not proper.  For example, the decision to reject the finding that Plaintiff has marked difficulties in the area of concentration, persistence or pace because Plaintiff's memory testing showed that she could recall five out of five items or because Plaintiff was found to have a GAF of 65 was not proper.  The fact that a person can recall five objects in memory testing does not necessarily mean that the person has no difficulties with concentration, persistence or pace.  Similarly, the fact that a person may have an overall GAF score of 65 indicating only mild to moderate problems does not mean that the person cannot have marked difficulties in a particular area.  *See Lee v. Barnhart*, 117 Fed. Appx. 674, 678, 2004 WL 2810224 (10th Cir. 2004) (recognizing that there are different spheres that the GAF score measures).  The ALJ's conclusions in this regard attempt to improperly substitute his lay judgment for that Dr. Caesar.

Finally, the ALJ relies heavily on the fact that Plaintiff is able to care for her children, drive a car, and engage in other activities as a basis to discount Dr. Caesar's

-14-

evaluation (and in finding that Plaintiff does not meet a listing under 12.00 at step

three).  However, this is not a legitimate basis to reject the PRT evaluation.  First, it is

speculation and/or a lay judgment to assume that because someone can care for a

child or drive, the person cannot also have mental impairments in the areas of

concentration or otherwise.  Second, on the issue of care for her children, the ALJ's

finding ignores the fact that the record actually points to significant parenting issues

that Plaintiff was having. See, *e.g.*, Tr. at 170, 173.

Since I find that the ALJ did not properly weigh the PRT evaluation and did not

give legitimate reasons for disregarding the findings made therein, I also find that a

remand is proper so that the ALJ can properly consider this evaluation in connection

with his step three analysis.  The ALJ stated at step three that "[t]he reviewing, treating

and examining sources . . . mentioned no findings that would be medically equivalent to

criteria contained in the Listing of Impairments. . . . ."  Tr. at 19.  While he recognized

that the claimant relied on the PRT evaluation in arguing that she met the requirements

of Listing 12.04, the ALJ did not consider the evaluation in connection with his step

three analysis since he gave the evaluation "no weight."  Tr. at 23.

However, this evaluation is extremely relevant to the step three analysis, and

must be properly evaluated at that step.  As stated above, the evaluation finds that

Plaintiff has an Affective Disorder under Section 12.04 of the Listings.  *Id.* at 167.  In

connection with that Disorder, the evaluation states that Plaintiff has disturbance of

mood, accompanied by a full or partial manic or depressive symptom characterized by

anhedonia or pervasive loss of interest in almost all activities, sleep disturbance,

-15-

psychomotor agitation or retardation, and difficulty concentrating or thinking.  *Id*. at 168.

These findings are sufficient to meet the requirements of Part A of Listing 12.04.  Under

Part B of Listing 12.04, the evaluation finds that Plaintiff has moderate restrictions of

daily living and one or two repeated episodes of decompensation.  *Id*. at 169.  These

findings may not be sufficient to meet Part B, however, this is somewhat uncertain

since the form concludes that Plaintiff meets the requirements of Listing 12.04.

    These are proper issues for the ALJ to address on remand.  If the ALJ believes

that the medical evidence needs to be further developed on this issue, he must do so.

*See Thomas*, 147 Fed. Appx. at 760.  In conducting the step three analysis on remand,

the Commissioner should also note the errors I find below in connection with his

decision to reject the findings of Plaintiff's other mental health practitioners and treating

sources, since this also may impact the analysis.

    I now turn to the findings of the consultative examiner, Dr. Wesley, that the ALJ

rejected.  Dr. Wesley's opinions, at least in part, tended to corroborate the PRT

evaluation.  Dr. Wesley diagnosed mental impairments of major depressive disorder

(severe), panic disorder without agoraphobia, pain disorder associated with both

psychological factors and a general medical condition, borderline personality traits, and

problems with "primary support group, occupational problems."  Tr. at 133.  He also

noted Plaintiff's chronic hip and back pain, arthritis, osteoporosis and tension

headaches.  *Id*.  While the mental status examination found no difficulties in certain

areas, he noted that Plaintiff's "[a]ffect is definitely constricted", her insight is limited,

her abstraction ability and memory are poor, and her sustained concentration,

-16-

understanding, social interaction, and adaptation are fair. *Id.* at 132-33.  He gave

Plaintiff an overall GAF score of 50, indicating "'serious symptoms . . . [or] serious

impairment in social, occupational, or school functioning.'" *Langley*, 373 F.3d at 1122

n. 3.

The ALJ rejected Dr. Wesley's findings stating that they are "based primarily on

the claimant's own statements which are not accepted as they were otherwise

substantiated by the record as a whole." Tr. at 22.  He further states that "the

claimant's treating sources have not diagnosed any mental disorder that has lasted

excepting an affective disorder" and that "his diagnoses are inconsistent with the bulk

of the evidence including a treating source who had the opportunity to see and treat the

claimant and who assigned a GAF score of 65, which is indicative of only mild

symptoms." *Id.*

I find that it was improper, as stated previously in connection with Dr. Caesar, to

reject Dr. Wesley's findings because they may be based in part on Plaintiff's

statements.  Further, the conclusion that Dr. Wesley's findings are inconsistent with the

record as a whole is not supported by substantial evidence.  The bulk of the medical

evidence on mental impairments, including those of Dr. Caesar and the mental health

practitioners at the San Luis Valley Mental Health Center and those of Dr. Jackson and

Brian Jackson, concur with many of his findings.  While the ALJ cited to Exhibit 5F as

supporting his assessment of Plaintiff's mental impairments, this was not a basis,

standing alone, to reject the findings of the other medical sources.  *Hamlin v. Barnhart*,

365 F.3d 1208, 1223 (10th Cir. 2004) (evaluations by consultative examiners that are

not accompanied by thorough written reports or testimony are insufficient to constitute substantial evidence).

As to the GAF score of 50 assigned by Dr. Wesley to Plaintiff, it is true that this is lower than the GAF score of 65 assigned by the treating source (Tr. at 177). However, I find that this alone does not provide a basis to reject Dr. Wesley's opinion, particularly in light of the fact that the treating source's PRT evaluation substantiated that Plaintiff has serious mental impairments.

Finally, as to the findings made by Dr. Jackson and physician assistant Brian Jackson on Plaintiff's mental impairments, the ALJ was not entitled to simply reject these outright on the basis that they were not within their area of expertise.  These findings must be taken into account and weighed using the factors relevant to evaluation of treating sources and in light of the record as a whole.  Treating physicians routinely diagnose depression and dispense medication for mental impairments, as was done in this case, and this treatment cannot be ignored.  This is particularly true since much of the evidence from the mental health practitioners validates the diagnoses of Dr. Jackson.  Further, I find no authority that holds that a treating physician cannot evaluate mental impairments in connection with work capacity, as was done in this case.  *See* Tr. at 153.  The ALJ was also required to give this evaluation proper weight.[4]

---

[4]  I also note that to the extent the ALJ rejected their findings of a severe psychosis on the basis that Plaintiff admitted she no longer has hallucinations, this is not necessarily supported by the record. The medical evidence is replete with findings that Plaintiff suffered from psychosis, requiring psychotropic medication, and that she suffered from psychotic symptoms and hallucinations. *See, e.g.,* Tr. at 109-110, 116-120, 128, 130, 179-188.

Based on the foregoing, I find that the ALJ did not properly weigh the findings of the treating physicians and other medical sources as to Plaintiff's physical and mental impairments.   As to the treating sources, the ALJ's decision that the opinions were not dispositive and not entitled to controlling weight was not based on substantial evidence but on erroneous and unsupported conclusions by the ALJ.   On remand, the Commissioner is ordered to properly weigh the medical evidence, with the admonition that she is not entitled to reject outright the opinions of the treating physicians.   Instead, the treating physicians' opinions are entitled to deference and must be weighed using all of the relevant factors set out in 42 U.S.C. § 404.1527.   *Langley*, 373 F.3d at 1120.

2.      <u>Whether the ALJ Erred in Connection with the RFC Assessment</u>

Plaintiff argues that the ALJ erred in failing to properly determine her RFC and in failing to articulate her work-related abilities on a function-by-function basis.   Plaintiff also argues that the ALJ erred in evaluating the effects of Plaintiff's medication and side effects, her pain, and her subjective complaints.   I agree.   First, as stated in the previous section, the ALJ did not properly weigh the evidence as to Plaintiff's physical and mental impairments.   On remand, after properly weighing the medical evidence, the ALJ is required to reassess Plaintiff' RFC in light of same.

Second, the RFC was inadequate in that it did not state specific and detailed findings as to Plaintiff's nonexertional impairments (including her pain, spasms, and headaches) and their impact on Plaintiff's ability to work.   *See Harrison v. Shalala*, No. 93-5238, 1994 WL 266742, *5 (10th Cir. 1994) ("[i]f the ALJ finds that plaintiff's pain, by itself, is not disabling, that is not the end of the inquiry . . . . [t]he [Commissioner] must

show that 'jobs exist in the national economy that the claimant may perform *given the*

*level of pain [she] suffers.*' . . . .[a] vocational expert is ordinarily required to determine

what limitation . . . pain might impose on [Plaintiff's] ability to do  . . . work") (quoting

*Thompson v. Sullivan*, 987 F.2d 1482, 1490-91 (10th Cir. 1993) (further quotations

omitted)).  The ALJ also erred in not assessing the impact of the pain medication that

Plaintiff was taking and her treating physician's statement that he would not be able to

provide "a significant pain relief for her without the use of narcotics", thus meaning that

Plaintiff would not be able to work.  *See* Tr. at 160.[5]  Finally, the ALJ erred by not

assessing the impact of the impairments that he found not to be severe.  *See Spicer v.*

*Barnhart*, 64 Fed. Appx. 173, 175-76, 2003 WL 21000999 (10th Cir. 2003).

        Third, I find that the ALJ's assessment that Plaintiff can do a full range of light

work (Tr. at 24) is not supported by any reference to the medical evidence.  The Court

is improperly left to speculate as to how this RFC was reached.  Further, I find no

evidence in the record that supports this finding, *i.e.*, I find no medical source that has

opined that Plaintiff can perform light work.

        The ALJ did find that the light work is restricted in certain ways; namely, that

Plaintiff has "nonexertional limitations of no foot or leg controls, no over chest-level

work, only occasional dealing with the public, and no complex tasks as defined as a

---

        [5]  I also note on this issue that the ALJ's finding that Plaintiff "has not required strong pain
medications and her pain symptoms are tolerable" (tr. at 24) is not supported by the record.  Indeed, the
record shows that Plaintiff repeatedly complains of pain, even after having been prescribed Vicodin,
Anaprox, and other strong medications.  *See id.* at 162-66, 179-190.  Further, the ALJ's finding that
Plaintiff "has not reported any ongoing adverse side effects [of her prescribed medications] to her
physician" (tr. 24) also contradicts the record, which shows that Plaintiff reported the medication makes
her extremely sleepy, nauseated, and "slowed down" so that she could "hardly move."  Tr. at 172.
Further, Dr. Jackson noted that the medications prescribed to Plaintiff "increase somnolance".  *Id.* at 155.

SVP of 2 or less." Tr. at 24. He stated that in reaching this conclusion, he gave some weight to the reports of the PRT evaluation conducted by the state agency source found in the record at 134-147 (exhibit 5F), and that this report was "generally consistent with the record." *Id*. I find that the ALJ erred in connection with his findings on this issue.

First, the findings in the PRT evaluation he cited are not generally consistent with the record; indeed, the findings in that form are not supported by any of the other assessments of Plaintiff's mental impairments discussed above or her treating physician's assessment of Plaintiff's mental impairments on her ability to work. Tr. at 154-59. Second, the impairments found by the ALJ in the RFC do not even track the restrictions found in Exhibit 5F that he relied on. *See id*. at 144 (noting moderate difficulties in maintaining concentration, persistence or pace and other mild difficulties). Finally, as stated previously, evaluations by consultative examiners such as this are insufficient to constitute substantial evidence where they are not accompanied by thorough written reports or testimony. *Hamlin*, 365 F.3d at 1223.

Accordingly, I find that this case must be reversed and remanded for a proper assessment of Plaintiff's RFC. On remand, the ALJ should also readdress Plaintiff's credibility, in that I find that this Order impacts certain findings as to Plaintiff's credibility (for example, the findings as to Plaintiff's pain medication and the impact of same and the fact that Plaintiff's activities are not necessarily inconsistent with her diagnoses).

3.   Whether the ALJ Erred in Connection with the Hypothetical
Question and in Finding that Work is Available to Plaintiff in
Significant Numbers

Plaintiff also argues that the hypothetical questions relied on by the ALJ failed to

state her impairment accurately, completely and with precision.  Further, Plaintiff

asserts that the ALJ's decision that work is available to Plaintiff in significant numbers

is not supported by substantial evidence.  These are issues that must be reevaluated

on remand after the Commissioner properly weighs the medical evidence, evaluates

Plaintiff's RFC and considers all her impairments, both exertional and nonexertional.  If

the Commissioner finds on remand that the hypothetical questions did not contain all of

Plaintiff's impairments, reliance on those questions and the testimony of the VE as to

the jobs that Plaintiff could perform would not be proper as support for the finding that

Plaintiff is not disabled.  *See Gay v. Sullivan*, 986 F.2d 1336, 1340 (10th Cir. 1993).

4.   Whether the Appeals Council's Decision Not to Review the Entire
Record was Arbitrary and Capricious

Finally, Plaintiff argues that because the Appeals Council did not review the

entire hearing record, including the claimant's testimony, and is not required to under

the regulations, the decision making process of the Council was inherently arbitrary

and capricious.  I reject this argument.  As explained by the Commissioner in its

response brief, the guidelines require the Appeals Council to conduct an audit of the

cassette tapes of the hearing as to the vocational expert testimony.  HALLEX 1-3-1-99.

In cases where there is a contention regarding the expert witness testimony, as here,

the Appeals Council is required to conduct a full audit of the expert witness testimony.

HALLEX 1-3-1-100.

Here, the Appeals Council stated in its August 27, 2004 Notice that it denied

Plaintiff's request for review of the ALJ's decision after "consider[ing] the reasons

[Plaintiff] disagree[]d with the decision.  Tr. at 4, 5, 7.  I find that Plaintiff has not shown

that the Appeals Council failed to comply with its guidelines.  I further find that Plaintiff

failed to show that these guidelines or the action taken by the Appeals Council  under

the guidelines are arbitrary and capricious.

III.   <u>CONCLUSION</u>

Based upon the errors described above, I find that this case must be reversed

and remanded for further fact finding consistent with this Order.

Accordingly, it is

ORDERED that this case is **REVERSED AND REMANDED** to the Commissioner

pursuant to 42 U.S.C. § 405(g) to make further findings consistent with this Order.

Dated February 1, 2006

                                        BY THE COURT:


                                        s/ Wiley Y. Daniel
                                        Wiley Y. Daniel
                                        U. S. District Judge